UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISA ABUBAKA,<br><br>                Petitioner,<br><br>     v.<br><br>PAMELA BONDI *et al.*,<br><br>                Respondents. | Case No. C25-1889RSL<br><br>ORDER GRANTING<br>HABEAS PETITION |

This matter comes before the Court on petitioner's petition for writ of habeas corpus (Dkt. # 1); the Government's return (Dkt. # 11); the declarations of Brett T. Booth and Kristin B. Johnson (Dkts. # 12, 13); and petitioner's reply (Dkt. # 14). Having considered these filings and the record herein, the Court GRANTS the petition and issues related orders concerning respondents' third-country removal policy as it pertains to petitioner.

**I.    Background**

Petitioner Isa Abubaka is a native and citizen of Vietnam. Dkt. # 13, Ex. A at 3. He is around 40 years old. Dkt. # 13, Ex. D at 1. Petitioner was admitted to the United States in 1989 as a child of a refugee. Dkt. # 13, Ex. A at 3. He never adjusted his status to lawful permanent resident. Dkt. # 12 at ¶ 4.

ORDER GRANTING HABEAS PETITION - 1

On June 4, 2015, petitioner was convicted of second-degree robbery in California and sentenced to two years in prison. Dkt. # 13, Ex. A at 3. On or about July 12, 2016, petitioner was taken into ICE custody. Dkt. # 12 at ¶ 7. On August 26, 2016, petitioner was ordered removed to Vietnam and his refugee status was terminated. Dkt. # 13, Ex. B at 1. No alternative country of removal was designated. *Id*. Petitioner's removal order became final on or about Sept. 8, 2016. Dkt. # 12 at ¶ 8. He was then released on an Order of Supervision. *Id*. at ¶ 9.

Eighteen months later, on or about March 15, 2018, petitioner was arrested for possession of cannabis. *Id.* at ¶ 10. The case was later dismissed. *Id.* In May 2018, petitioner was arrested for assault in California. On or about Jan. 9, 2019, he was convicted of Assault by Means of Force Likely to Produce Great Bodily Injury and sentenced to six years' incarceration. *Id*. at ¶ 11. On or about April 27, 2021, petitioner was taken into ICE custody a second time and then released "the same day" on a second Order of Supervision. *Id*. at ¶ 12. Petitioner was then arrested for unlawful possession of a stun gun or tear gas on or about March 18, 2022. *Id*. at ¶ 13. "It is unclear whether Petitioner was convicted on anything in relation to this arrest, but it appears he was convicted of an unknown charge on or about December 18, 2023 and sentenced to 120 days incarceration." *Id*. On or about June 6, 2022, petitioner was arrested for arson, making a destructive device, and possessing or using explosives in California. *Id*. at ¶ 14. He was convicted of possession of an explosive device and sentenced to six years' incarceration. *Id*.

ICE took petitioner into custody a third time on or about Feb. 27, 2025. Dkt. # 12 at ¶ 15. ICE has maintained custody of petitioner since then and is currently detaining petitioner at the Northwest ICE Processing Center in Tacoma, Washington. *Id*. at ¶ 3. ICE is seeking to deport

ORDER GRANTING HABEAS PETITION - 2

petitioner to Vietnam and has "initiated a travel document request with the Government of Vietnam by having the Petitioner fill out all the requisite forms." *Id*. at ¶ 17. The last of those forms has been submitted for translation into Vietnamese and ICE states that an unspecified number of petitioner's forms are "due back on October 24, 2025." *Id*. On the current record, it is not clear whether ICE received all of the necessary forms back from the translator, nor is there any record of ICE submitting any translated forms. *Id*.

Petitioner filed for a writ of habeas corpus on Sept. 30, 2025. Dkt. # 1.

## II. Discussion

### A. Specific Relief Requested

Petitioner's habeas petition asks this Court to:

(1) Order respondents to immediately release petitioner from custody pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001);

(2) Order that respondents may not seek to remove petitioner to a third country "without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings"; and

(3) Order that respondents may not remove petitioner to any third country because respondent's third country removal program is unconstitutionally punitive.

Dkts. # 1, 14.

**B. Petitioner's Ability to Seek Relief**

The Government contends this Court "may not issue the relief sought by Abubaka because he is a member of the plaintiff class in *D.V.D. v. Dep't Homeland Sec.*, Civ. A. No. 25-10676 (D. Mass.)." Dkt. # 11 at 2:6–12.

> The plaintiff class in *D.V.D.* sought and received an injunction barring ICE from removing members of the class to third countries. That injunction was stayed by two orders of the Supreme Court. Abubaka cannot end-run the Supreme Court's stay of an injunction barring his removal to a third country by seeking the same relief in a different court . . .
>
> Simply put, Abubaka is not entitled to another bite at the apple before this Court to obtain relief that has already been stayed by the Supreme Court.

*Id.* at 2:6–12, 9:3–11:24. In August, the Government made the same argument in *Nguyen v. Scott*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *20–23 (W.D. Wash. Aug. 21, 2025). More recently, the Government made the same argument to this Court in *Baltodano v. Bondi*, No. 2:25-CV-01958-RSL (W.D. Wash. Nov. 7, 2025). In the present matter, the Government's briefing on this topic is almost word-for-word identical to the Government's briefing on this topic in the *Nguyen* and *Baltodano* cases. *Compare* No. 2:25-CV-01398-TMC, Dkt. # 37 at 17–20 *with* No. 2:25-CV-01958-RSL, Dkt. # 16 at 14–16 *and* No. 25-CV-01889-RSL, Dkt. # 11 at 9–11. As in *Baltodano*, this Court adopts the *Nguyen* court's detailed and thoughtful analysis of this issue and the *Nguyen* court's findings that (1) "The class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country removal" and (2) absent "clear guidance from the Supreme Court," which the emergency docket order in *D.V.D.* does

ORDER GRANTING HABEAS PETITION - 4

not provide, this Court must follow well-established precedent. *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *20–23 (W.D. Wash. Aug. 21, 2025).

### C. Petitioner's Request for Immediate Release Under *Zadvydas*

As the *Nguyen* court recounted:

> In *Zadvydas*, the Supreme Court held that the [Immigration and Nationality Act] does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat[.]" *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] ... [t]he Fifth Amendment's Due Process Clause[.]" *Id.* at 690, 121 S.Ct. 2491. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.*

No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *12 (W.D. Wash. Aug. 21, 2025).

The *Zadvydas* decision traces, in part, to this Court's 1999 decision to order a noncitizen released from custody on due process grounds. *See Kim Ho Ma v. I.N.S.*, 56 F. Supp. 2d 1165 (W.D. Wash. 1999) (involving a Cambodian refugee who was convicted of first-degree manslaughter, served two years of incarceration, and then was detained by the Immigration and Naturalization Service for over two years while awaiting removal); *Ma v. Reno*, 208 F.3d 815, 819 (9th Cir. 2000); *Zadvydas*, 533 U.S. 678, 685 (2001). *See also* C99-151RSL, Dkt. # 79. In *Zadvydas*, the Supreme Court held that "for the sake of uniform administration in the federal courts," following a final removal order it is "presumptively reasonable" for the Government to detain a noncitizen for six months while the Government works to remove that person from the United States. *Zadvydas*, 533 U.S. 678 at 682, 701 (2001). "After this 6–month period, once the

alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. This does not mean a noncitizen may not be held past the six-month period of presumptive reasonability. *Id*. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." But, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

### 1. Petitioner Has Met His Burden Under *Zadvydas*

Once the six-month period of "presumptively reasonable" detention has expired a petitioner seeking release from pre-removal detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701 (2001). Here, petitioner was ordered removed and his refugee status was terminated on or about Aug. 26, 2016. Dkt. # 12 at ¶ 8. Petitioner's removal order became final on or about Sept. 8, 2016. *Id*. Petitioner was then released on an order of supervision. *Id*. at ¶ 9. He was arrested twenty months later in California for assault, was ultimately convicted, and was sentenced to six years' incarceration. *Id*. at ¶ 11. About twenty-seven months after his assault conviction, petitioner was taken into ICE custody and released "the same day" on an order of supervision. *Id.* at ¶ 12. A little more than a year later, petitioner was arrested in California for arson, making a destructive device, and possessing or using explosives. *Id.* at ¶ 14. He was convicted of Possession of an Explosive Device in Dec. 2023 and sentenced to six years' incarceration. *Id*. About fourteen months later, on or about February 27,

ORDER GRANTING HABEAS PETITION - 6

2025, he was again taken into ICE custody and has remained in ICE custody since that time. *Id*. at ¶ 15–17.

The *Nguyen* court, citing rulings from district courts in California and Louisiana, found that where a petitioner has been detained and released by ICE multiple times after a final order of removal, "the clock" on *Zadvydas*'s six-month period of presumptive reasonability does not re-start with each successive detention. No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *1–4, 13 (W.D. Wash. Aug. 21, 2025). This Court agrees with and adopts that finding. However, it appears that petitioner's 2021 detention by ICE resulted in a "same day" release. Dkt. # 12 at ¶ 12. Adding that less-than-one-day term of ICE detention to petitioner's current term of ICE detention, which began on or about Feb. 7, 2025 (Dkt. # 12 at ¶ 15), the Court determines that petitioner has presently been detained by ICE after a final order of removal for a total of about nine months and ten days. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has expired. 533 U.S. 678 at 701 (2001). Petitioner must next show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Petitioner contends there is no significant likelihood of his removal in the reasonably foreseeable future because on this record (1) the Government has not shown that it has received the necessary translated documents and submitted those documents, or any documents at all, to the Vietnamese government for the purpose of applying for travel documents for petitioner; (2) the Government is "silent as to what documents ICE has in its possession and what additional documents might be needed"; (3) petitioner is a pre-1995 immigrant from Vietnam

ORDER GRANTING HABEAS PETITION - 7

and, as the *Nguyen* court found, "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted"; (4) as in *Nguyen*, petitioner here has no known family or connections in Vietnam; and (5) "the government has provided no information that [petitioner] has a Vietnamese birth certificate or any other documentation verifying Vietnamese identity." Dkt. # 14 at 4–5; No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *14–15 (W.D. Wash. Aug. 21, 2025).

Unlike the petitioner in *Nguyen*, petitioner here has not submitted evidence to this Court showing that a response from Vietnam to a request for travel documents for a pre-1995 immigrant is likely to take "many months," rather than the thirty days the Government appears to predict here. Dkt. # 11 at 7; No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *14–15 (W.D. Wash. Aug. 21, 2025). In *Nguyen*, the evidence submitted on this point included a supporting affidavit from an experienced immigration attorney representing Vietnamese nationals and a 2025 declaration from an ICE agent indicating a lengthy, still-unsuccessful process for securing travel documents for a pre-1995 Vietnamese immigrant in the Eastern District of California. No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *14–15 (W.D. Wash. Aug. 21, 2025). However, while petitioner here has not submitted this sort of evidence, this Court does have the *Nguyen* court's finding based on the evidence that court received. The *Nguyen* court's finding, as noted by petitioner here, is that "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted." *Id*. Thus, as in *Nguyen*, this Court finds that petitioner has sufficiently shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" given the "uncertain and protracted"

ORDER GRANTING HABEAS PETITION - 8

process for procuring travel documents for pre-1995 Vietnamese immigrants. *Id*.; *Zadvydas*, 533 U.S. 678 at 701 (2001).

### 2. Respondents Have Not Met Their Burden Under *Zadvydas*

Once petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to respondents to "respond with evidence sufficient to rebut that showing." *Id*. Here, respondents argue that petitioner's time in ICE detention, although a few months longer than the presumptively reasonably six months, is considerably shorter than the "approximately 20 months in ICE custody over three periods of detention" that was experienced by the petitioner in *Nguyen*. Dkt. # 11 at 8:22–9:4. In addition, respondents contend:

> While [petitioner] claims that Vietnam has rarely issued travel documents in the past and likely will not issue one for him now, ICE has undertaken several negotiations with the Government of Vietnam to establish a process for regularized removals of final order Vietnamese citizens who entered the United States on or prior to July 12, 1995. Booth Decl. ¶¶ 18-21. The Government of Vietnam has agreed to increase cooperation with the United States and issue travel documents in less than 30 days. *Id.* at ¶ 19. In Fiscal Year 2024, ICE removed 58 final order Vietnamese citizens to Vietnam. *Id.* at ¶ 20. In Fiscal Year 2025, as of September 11, 2025, ICE has removed 569 Vietnamese nationals to Vietnam. *Id.* The Government of Vietnam has not taken more than 30 days to issue a travel document pursuant to any of ICE's requests since mid-February 2025. *Id.* at ¶ 21.

*Id*. at 7:5–14. In *Nguyen*, the Government similarly highlighted that "ICE has undertaken a number of negotiations with the Government of Vietnam to establish a process for regularized removals of final order Vietnamese citizens who entered the U.S. on or prior to July 12, 1995." No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *6 (W.D. Wash. Aug. 21, 2025) (citing to *Nguyen* Dkt. 14 at ¶ 11). In neither *Nguyen* nor this case did the Government specify when these

ORDER GRANTING HABEAS PETITION - 9

negotiations most recently occurred or how many negotiations are encompassed by "a number" and "several." *Id*.; Dkt. # 11 at 7:5–14. In *Nguyen*, as here, the Government filed a declaration stating that the "Government of Vietnam has agreed to increase cooperation with the United States and issue travel documents in less than 30 days" and that "[t]he Government of Vietnam has not taken more than 30 days to issue a travel document pursuant to any of our requests since mid-February 2025." No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025). In *Nguyen*, the Government likewise made the claim it makes here concerning the number of removals of Vietnamese citizens to Vietnam in Fiscal Year 2024. *Id*. The Government in *Nguyen* also made a claim similar to the one it makes here about the number of removals of Vietnamese citizens to Vietnam in Fiscal Year 2025 (although the 2025 removal number in *Nguyen* is lower than the respondents' number here, likely because the number in *Nguyen* was tallied as of July 25, 2025). *Id*.

   Here, as in *Nguyen*, the declaration submitted by the Government "did not note" how many of the removals of Vietnamese citizens that the Government claims for Fiscal Years 2024 and 2025 "were pre-1995 arrivals." *Id*. at *17. Thus, "[a]t most" the declaration here, like the declarations in *Nguyen*, "establish[es] that Vietnam is accepting more of its citizens for repatriation, including at least some citizens who arrived in the United States before 1995." *Id.* at *15. But even assuming that the Government's numbers for Fiscal Years 2024 and 2025 include *some* pre-1995 arrivals (an "[a]t most" assumption not concretely supported by respondents' declaration here), all this Court could take from this "[a]t most" assumption is that "there is at least some possibility that Vietnam will accept Petitioner at some point." *Id*.

ORDER GRANTING HABEAS PETITION - 10

> [T]hat is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Chun Yat Ma*, 2012 WL 1432229, at *4–5; *Hoac*, 2025 WL 1993771, at *3.

*Id*. at *16. As discussed above, the Government's suggestion that a pre-1995 Vietnamese immigrant's application for travel documents is likely to be granted by the Government of Vietnam within thirty days of submittal was not deemed persuasive in *Nguyen*. *Id*. at *14–15. In addition, here, as in *Nguyen*, "[t]he government has not provided any evidence of Vietnam's eligibility criteria or why it believes Petitioner now meets it." *Id*. at *18. Finally, unlike in *Nguyen*, where a request for travel documents had been sent to Vietnam on a date certain, here the record before this Court only shows the Government making preparations to submit a travel document request to the Government of Vietnam by having certain documents translated; the record here does not show that the translated documents have been submitted. *Id*.; Dkt. # 12 at ¶ 17. Even assuming the required documents have now been translated and a complete travel document request submitted to the Government of Vietnam, this Court "does not know if Vietnam has acknowledged or otherwise responded to the request" and "does not know how long Petitioner may have to wait for travel documents—if Vietnam even decides to provide them." *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025). Therefore, even though petitioner's time in "postremoval confinement" here is considerably shorter than in *Nguyen*, this Court finds that respondents have failed to rebut

ORDER GRANTING HABEAS PETITION - 11

petitioner's showing of "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 678 at 701 (2001). *See also Kamyab v. Bondi*, No. C25-389RSL, 2025 WL 2917522 (W.D. Wash. Oct. 14, 2025). The Court thus orders respondents to immediately release petitioner from detention on conditions of supervision that are reasonable in light of respondents' assertion that petitioner "poses a risk of flight because he alleges no avenue to seek relief from removal." Dkt. # 11 at 8:12–13.

### D. Petitioner's Claims Regarding Due Process and the Current Third-Country Removal Policy

In 2019, this Court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden*, 409 F. Supp. 3d 998 at 1009–11 (W.D. Wash. 2019). Citing the due process clause along with relevant statutes and regulations, this Court also held that "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due process in these circumstances." *Id*. Rather, a petitioner must be able to pursue his claim for withholding of deportation in *reopened* removal proceedings before an immigration judge. *Id*. In August, the *Nguyen* court noted that this Court's holdings in *Aden* "flow directly from binding Ninth Circuit precedent" and held that ICE's current policy on third-country removals "contravenes Ninth Circuit law." *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *18–19 (W.D. Wash. Aug. 21, 2025).

ORDER GRANTING HABEAS PETITION - 12

Courts in this district have recently found that due process challenges to ICE's third-country removal policy are likely to succeed on the merits. *See Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *19 (W.D. Wash. Aug. 21, 2025) (finding petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 2987766, at *3 (W.D. Wash. Oct. 23, 2025) (finding petitioner "likely to succeed on the merits of his claim that he is entitled to 'legally required multistep procedures set out in 8 U.S.C. § 1231(b) and required by due process' before ICE can remove him to a third country"); *J.R. v. Bostock*, No. 2:25-CV-01161-JNW, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025); *Phetsadakone v. Scott*, No. 2:25-CV-01678-JNW, 2025 WL 2579569, at *4 (W.D. Wash. Sept. 5, 2025); *Phaymany v. Northwest Immigration and Customs Enforcement Processing Center*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025).

Here, unlike in those cases, the Court will be making a final determination on the merits of petitioner's argument that due process does not allow respondents to "remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. # 14 at 10:12–14. Respondents counter that this Court should deny petitioner's "request for an order barring his removal to a third country"[1] because ICE is "solely" seeking to remove petitioner to

---

[1] This statement by respondents appears to be addressing two of petitioner's requests simultaneously. Dkt. #11 at 8:16–9:2. *See also id.* at 8:21 n.4. Those two requests are that (1) this Court order respondents "not to remove or seek to remove him to a third country without notice and

ORDER GRANTING HABEAS PETITION - 13

Vietnam and "will not attempt a third country removal unless and until Vietnam denies the pending travel document request." Dkt. # 11 at 8:18–20. The Government made an identical statement in *Nguyen*, but the court there found this voluntary promise by the Government "insufficient to rebut Petitioner's showing of irreparable harm" that would accrue from removal to a third country without meaningful opportunity to challenge that decision. No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *27 (W.D. Wash. Aug. 21, 2025). While the *Nguyen* court was considering petitioner's request for a preliminary injunction—a request the *Nguyen* court ultimately granted—this Court shares the *Nguyen* court's view that a voluntary promise not to attempt third country removal "unless and until Vietnam denies the pending travel document request" is insufficient to protect petitioner's statutory and due process rights. *Id*. This is especially so where, as here and in *Nguyen*, the Government is only voluntarily promising that "should ICE decide to remove [petitioner] to a third country, ICE will provide Petitioner's counsel 24 hours advance notice." Dkt. # 11 at 8:20–21; *Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288 at *28 (W.D. Wash. Aug. 21, 2025). Thus, the Court finds that respondents' voluntary promises here do not satisfy the requirement of due process.

The Court also notes respondents' unexplained statement that under the current third-country removal policy respondents are "no longer fully following" this Court's due process

---

meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings" and (2) this Court "order that Respondents may not remove [petitioner] to any third country because Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects". Dkt. # 14 at 10:12–17. In this section of the Court's order, the Court deals only with the first request.

ORDER GRANTING HABEAS PETITION - 14

holdings in *Aden*, 409 F. Supp. 3d 998 at 1009–11 (W.D. Wash. 2019). Dkt. # 11 at 8 n.4 (stating: "The July 9 [ICE] memo sets forth Respondents' current policy on third country removals both nationwide and in the Western District of Washington where Respondents are no longer fully following the process discussed in *Aden v. Nielsen, et al.*, WDWA Case No. C18-1441-RSL, at Dkt. 16."). In *Aden*, this Court considered the habeas petition of a non-citizen who was born in a refugee camp in Kenya but was facing removal to Somalia, "a country that was not discussed during the removal proceedings as an alternative country of removal." 409 F. Supp. 3d 998 at 1011–12 (W.D. Wash. 2019). In other words, the petitioner in *Aden* was facing third-country removal. *Id*. This Court held that while the Government may designate a removal country outside of removal proceedings, it must do so in compliance with relevant regulations and statutes, including 8 U.S.C. § 1231(b), while also affording due process. *Id.* at 1008–11. Specifically, this Court held that "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation" in reopened removal proceedings. *Id.* Respondents here make no effort to explain why they are "no longer fully following" *Aden* and have replaced the process it requires with a combination of new agency policy (the ICE memo of July 9, 2025) and voluntary promises. *Id*.

    This Court recognizes that *Aden* is not binding precedent in this or any other judicial district, or even upon this Court in this case. *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) (citing *Camreta v. Greene*, 563 U.S. 792, 709 n.7 (2011)). That being said, this Court finds that its ruling in *Aden* remains persuasive today and therefore

ORDER GRANTING HABEAS PETITION - 15

this Court adopt its holdings in *Aden* for the purposes of this ruling and grants petitioner's request for an order that respondents may "not remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." *Id*.; Dkt. # 14 at 10:12–14.

### E. Petitioner's Claims Regarding the "Punitive" Nature of the Current Third-Country Deportation Policy

Petitioner claims the Government's third-country deportation policy is "punitive" and therefore unconstitutional under *Wong Wing v. United States*, 163 U.S. 228, 236–38 (1896). Dkt. # 1 at 14–16.

> In *Wong Wing*, the Court invalidated a portion of the [Chinese Exclusion Act] which provided that "any such Chinese person, or person of Chinese descent, convicted and adjudged to be not lawfully entitled to be or remain in the United States, *shall be imprisoned at hard labor for a period not exceeding one year*, and thereafter removed from the United States." *Wong Wing*, 163 U.S. at 233–34, 16 S.Ct. 977 (emphasis added). The Court held that while "it is within the constitutional power of congress" to deport those unlawfully present in the United States, Congress could not add to the sanction of expulsion the "punishment by imprisonment at hard labor ... without a trial by jury." *Id.* at 235, 16 S.Ct. 977. The Court explained that there is a fundamental difference between "detention or temporary confinement" while awaiting deportation and "imprisonment at hard labor." *Id.* at 236, 16 S.Ct. 977. The latter, the Court concluded, was an "infamous punishment" that could only be imposed following a criminal trial with the full protection of the Fifth and Sixth Amendments. *Id.* at 237–38, 16 S.Ct. 977.
>
> More than a hundred years later, the Court affirmed this holding in *Zadvydas*, noting that it had previously "held that the Due Process Clause protects an [noncitizen] subject to a final order of deportation, ... though the nature of that protection may vary depending upon status and circumstance[.]" 533 U.S. at 693–94, 121 S.Ct. 2491 (citation modified). *Zadvydas* further clarified *Wong Wing* had "held that punitive measures could not be imposed upon [noncitizens] ordered removed because 'all persons within the territory of the United States are entitled to the protection' of the Constitution." *Id.* at 694, 121 S.Ct. 2491 (quoting *Wong Wing*,
ORDER GRANTING HABEAS PETITION - 16

163 U.S. at 238, 16 S.Ct. 977). The Court described this as a "substantive protection[ ] for aliens who had been ordered removed." *Id.* at 694, 121 S.Ct. 2491. In the wake of these cases, the Ninth Circuit has similarly "recognized [ ] limits on detention of noncitizens pending removal," specifically noting that "[s]uch detention may not be punitive[.]"*Rodriguez v. Robbins*, 804 F.3d 1060, 1076 (9th Cir. 2015), *rev'd sub nom. on other grounds Jennings v. Rodriguez*, 583 U.S. 281, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) (citation omitted).

*Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *23 (W.D. Wash. Aug. 21, 2025). In *Nguyen*, the court was also presented with a claim that the Government's present third-country deportation policy is "punitive" and therefore unconstitutional under *Wong Wing*. *Id*. In analyzing that claim, the *Nguyen* court first took judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice." *Id*. The *Nguyen* court found that:

> [T]hese statements . . . do offer evidence that third country deportation is occurring as a punishment. *See, e.g.*, Dkt. 25 at 13 (official video of President Donald J. Trump stating "[I]f illegal aliens choose to remain in America, they're remaining illegally and they will face severe consequences. Illegal aliens who stay in America face punishments, including significant jail time, enormous financial penalties, confiscation of all property, garnishment of all wages, imprisonment and incarceration, and sudden deportation in a place and manner solely of our discretion."); *see also id.* (statement by President Donald J. Trump that immigrants would be detained at Guantanamo Bay prison because "it's a tough place to get out" and "we don't want them coming back.").

*Id*. at *24. The *Nguyen* court also analyzed "sworn declarations that pre-1995 Vietnamese immigrants who have been deported to South Sudan and Eswatini have been imprisoned incommunicado since their arrival." *Id* at *8, 24. Finally, the *Nguyen* court noted that "[o]ther courts across the country have recognized that the government is intentionally

ORDER GRANTING HABEAS PETITION - 17

removing individuals to countries where they will be imprisoned," including El Salvador. *Id*. at *24. In *Nguyen*, the Government "did not address the merits of the claim [that the current third-country deportation policy is unconstitutionally punitive] at all," arguing only that relief from third-country removal was foreclosed by the *D.V.D.* litigation. *Id*. at *25. The same thing is occurring here: Respondents do not address the merits of petitioner's claim that the current third-country removal policy is unconstitutionally punitive, arguing only that relief from third-country removal is foreclosed by the *D.V.D.* litigation. Dkt. #11 at 8:16–11:24. As explained above, respondents' arguments with respect to the *D.V.D.* litigation are almost word-for-word identical to the Government's briefing on this topic in the *Nguyen* and *Baltodano* cases and fail for the same reasons those earlier arguments failed. *Compare* No. 2:25-CV-01398-TMC, Dkt. # 37 at 17–20 *with* No. 2:25-CV-01958-RSL, Dkt. # 16 at 14–16 *and* No. 25-CV-01889-RSL, Dkt. # 11 at 9–11. *See also Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *20–23 (W.D. Wash. Aug. 21, 2025). That leaves this Court with no argument from respondents to consider on this topic.

      This case, like *Nguyen*, involves a pre-1995 Vietnamese immigrant who reasonably fears third-country deportation under the current Government policy to places that include South Sudan and Eswatini, where other pre-1995 Vietnamese immigrants have been deported and are reportedly being held incommunicado (and, in Eswatini, in solitary confinement). No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *23–25 (W.D. Wash. Aug. 21, 2025); Dkt. # 1 at 10:13–15. This Court will therefore apply the *Nguyen*

ORDER GRANTING HABEAS PETITION - 18

court's findings on the punitive nature of the current third-country removal policy to this matter. *Id*. Further, this Court holds that the government's practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under *Wong Wing*, 163 U.S. 228 at 236–38 (1896), and *Zadvydas*, 533 U.S. 678 at 693–4 (2001). Therefore, the Court orders respondents not to remove petitioner to any third country where he is likely to face imprisonment upon arrival.

### III.   Conclusion

For all the foregoing reasons, petitioner's petition for writ of habeas corpus (Dkt. # 1) is GRANTED. The Court orders respondents to immediately release petitioner from detention on conditions of supervision that are reasonable in light of respondents' assertion that petitioner "poses a risk of flight." Dkt. # 11 at 8:12–13. The Court additionally orders respondents not to remove or seek to remove petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings. *See Aden*, 409 F. Supp. 3d 998 at 1009–11 (W.D. Wash. 2019). Finally, the Court holds that the government's practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under *Wong Wing*, 163 U.S. 228 at 236–38 (1896), and *Zadvydas*, 533 U.S. 678 at 693–4 (2001). *See also Nguyen*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *23–24 (W.D. Wash. Aug. 21, 2025). Therefore, the Court orders respondents not to remove petitioner to any third country where he is likely to face imprisonment upon arrival.

ORDER GRANTING HABEAS PETITION - 19

IT IS SO ORDERED.

DATED this 17th day of November, 2025.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING HABEAS PETITION - 20